NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000717
27-MAY-2015
10:00 AM

NO. CAAP-12-0000717

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
SUNNI WEST, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(Kaneohe Division)
(CASE NO. 1DTA-10-03989)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Fujise and Reifurth, JJ.)

Plaintiff-Appellee State of Hawaiʻi (State) charged Defendant-Appellant Sunni West (West) with the offense of operating a vehicle under the influence of an intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a)(1) and/or (a)(3) (Supp. 2014).[1/] West was also cited for the traffic infraction for driving improperly on a laned roadway, in

_____

[1/] HRS § 291E-61(a)(1) and (a)(3) provide:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]

. . .

(3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

violation of HRS § 291C-49(1) (2007).[2] West's motion to suppress evidence obtained after her traffic stop was denied by the District Court of the First Circuit (District Court).[3] The State proceeded to trial on the HRS §291E-61(a)(3) portion of the OVUII charge and the traffic infraction. The District Court found West guilty of OVUII and found that she had committed the traffic infraction.

West appeals from the Judgment entered on her OVUII conviction, which was filed in the District Court on July 13, 2012. On appeal, West contends that: (1) the District Court erred in denying her motion to suppress evidence; (2) the State failed to lay a sufficient foundation for the admission of the Intoxilyzer 8000 test results; (3) the District Court improperly took judicial notice that the use of the Intoxilyzer 8000 for breath alcohol testing was approved by the DUI Coordinator; and (4) the admission of exhibits showing that an Intoxilyzer supervisor had performed accuracy tests on the Intoxilyzer 8000 and the results of those tests violated her confrontation rights. We affirm.

I.

Honolulu Police Department (HPD) Officer Colby Kashimoto (Officer Kashimoto) observed the car West was driving weaving within its lane, then twice cross over the lane marking into the adjoining lane without the car's turn signal being used. Based on these observations, Officer Kashimoto pulled West's car over for the traffic infraction of "unsafe lane change, not traveling within its lane of travel."

---

[2] HRS § 291C-49(1) provides:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.

(1)    A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety.

[3] The Honorable David W. Lo presided.

Upon approaching West's car and speaking to her, Officer Kashimoto noticed that West had an odor of alcohol on her breath, that her eyes were glassy and bloodshot, and that her speech was slightly slurred. West agreed to take field sobriety tests, and she stumbled as she got out of her car. She then performed poorly on the field sobriety tests. Officer Kashimoto arrested West for OVUII and cited her for crossing over the highway's marked lanes.

At the police station, West agreed to take a breath alcohol test. HPD Officer Jason Dela Cruz used an Intoxilyzer 8000, manufactured by CMI Incorporated, to administer the breath alcohol test. The test showed that West had a breath alcohol concentration of 0.114 grams of alcohol per 210 liters of breath -- a concentration that exceeded the legal limit.

II.

We resolve the issues raised by West on appeal as follows.

A.

West contends that the police lacked reasonable suspicion to stop her car and therefore the Circuit Court erred in denying her motion to suppress evidence. West argues that a traffic stop requires reasonable suspicion that criminal activity is afoot and that simply committing a moving violation under the traffic code, without the police observing a pattern of erratic driving, is not enough to justify a traffic stop. We conclude that West's arguments are without merit.

The police may lawfully stop a driver for a traffic violation, including a non-criminal traffic infraction. See State v. Powell, 61 Haw. 316, 320, 603 P.2d 143, 147 (1979) ("[The State's] authority to stop vehicles in cases of *observed* traffic or equipment violations cannot be seriously questioned."); State v. Estabillio, 121 Hawai'i 261, 270, 218 P.3d 749, 758 (2009) ("Here, it is undisputed that the traffic stop for speeding and vehicle registration infractions was constitutional inasmuch as it was based on 'specific and

3

articulable facts[.]'"); <u>State v. Barros</u>, 98 Hawai'i 337, 342, 48 P.3d 584, 589 (2002) (stating that "there appears to be no doubt that Officer Hood could lawfully stop Barros to cite him for [jaywalking -- a non-criminal traffic infraction]" committed in the officer's presence). Here, Officer Kashimoto observed West's car weaving within its lane and twice crossing over the lane marking into the adjoining lane without the turn signal being used.[4] We conclude that Officer Kashimoto lawfully stopped West for violating HRS § 291C-49(1), and therefore, her motion to suppress evidence as the fruit of an unlawful traffic stop was properly denied by the District Court.

B.

West argues that the State failed to lay a sufficient foundation for the admission of the Intoxilyzer 8000 test results because it failed to establish that the operator was trained and that the device was maintained and used in compliance with the manufacturer's recommendations. We disagree. The State sufficiently established the reliability of the test results by demonstrating compliance with the applicable administrative rules. The State was not required to show compliance with manufacturer recommendations to lay a sufficient foundation for the admission of the test results. <u>See</u> <u>State v. Hsu</u>, No. CAAP-10-0000214, 2013 WL 1919514, at *1-2 (Hawai'i App. May 9, 2013) (SDO).

C.

West contends that the District Court improperly took judicial notice that the use of the Intoxilyzer 8000 for breath alcohol testing was approved by the DUI Coordinator. The State responds that while the District Court apparently believed it had taken judicial notice of the DUI Coordinator's approval, the District Court did not specifically state its taking of judicial

---

[4] In reviewing the District Court's denial of West's motion to suppress evidence, we consider the evidence presented at the hearing on the suppression motion and the evidence presented at trial. <u>State v. Kong</u>, 77 Hawai'i 264, 266, 883 P.2d 686, 688 (App. 1994).

4

notice on the record. The State argues that the District Court's failure to state that it was taking judicial notice is immaterial because this court on appeal may take judicial notice of the same matters that were requested during trial. We agree.

An appellate court may take judicial notice of appropriate facts. <u>See</u> Hawaii Rules of Evidence (HRE) Rule 201(f) (1993) ("Judicial notice may be taken at any stage of the proceeding."); <u>see also</u> <u>State v. Davis</u>, 133 Hawai'i 102, 122, 324 P.3d 912, 932 (2014). The State requests that we take judicial notice of the DUI Coordinator's approval of: (1) the Intoxilyzer 8000 as a breath alcohol testing instrument; and (2) the use of its Internal Standards as a accuracy verification device. <u>See</u> HRE Rule 201(b) (1993) ("A court shall take judicial notice if requested by a party and supplied with the necessary information.").

In support of its request, the State submitted documents signed by the DUI Coordinator and certified by the DUI Coordinator as "true and correct" copies of public documents on file in the Department of Health. In a memorandum dated August 25, 2004, the DUI Coordinator states that:

> In accordance with Title 11, Administrative Rules, State Department of Health, Chapter 114 'Testing of Blood, Breath, and Other Bodily Substances for Alcohol Concentration' -5 <u>Instrument Approvals</u> (dated Dec. 30, 1993) the following instruments have been evaluated by the DUI Coordinator and approval is granted for their use:
>
> > Intoxilyzer Model #5000
> > Intoxilyzer Model #8000
>
> These instruments are listed on the [Department of Transportation (DOT) National Highway Traffic Safety Administration (NHTSA)] Conforming Products List of Evidential Breath Measurement Devices (Federal Register/Vol 69, No. 134/ Wednesday, July 14, 2004/Notices).
>
> . . . .
>
> The Internal Standards options offered by CMI (the manufacturer of Intoxilyzer Models #5000 and #8000) have been evaluated by the DUI Coordinator and comply with Title 11, Chapter 114-5(a)(3). Approval is granted for the use of Internal Standards as an accuracy verification device with each breath alcohol analysis performed.

The State also submitted two letters from the DUI Coordinator to HPD Sergeant Roland Kondo, dated August 6, 2008, and March 19, 2008, respectively, which refer to the DUI Coordinator's approval under Hawai'i Administrative Rules (HAR) Title 11, Chapter 114 of the Intoxilyzer 8000 and the HPD's "Intoxilyzer 8000 Breath Alcohol Operator Training Program Outline dated February 4, 2009."

HAR § 11-114-5 (1993), entitled "Instrument approvals," provides:

> (a)   Breath alcohol tests shall be performed using a model of:
>
> (1)   Breath alcohol testing instrument;
>
> (2)   Breath alcohol testing instrument accessories; and
>
> (3)   Accuracy verification device
>
> which are approved by the DUI coordinator.
>
> (b)   The model specifications of NHTSA for evidential breath alcohol testing devices and for calibrating units (referred to in this subchapter as accuracy verification devices) for breath alcohol testers, as contained in 49 CFR, No. 242, pp. 48854-48865 and 49 CFR, No. 242, pp. 48865-48872, respectively, are integrated into and made a part of this subchapter. Accordingly, those models of instruments, accessories, and calibrating units appearing in the "Conforming Products List of Evidential Breath Measurement Devices" as contained in 57 CFR, No. 46, pp. 8375-8376, and "Conforming Products List of Calibrating Units for Breath Alcohol Testers" as contained in 56 CFR, No. 54, pp. 1187-11819, are approved by the DUI coordinator for purposes of this subchapter. [5/]

---

[5/] West contends that the "CFR" citations referred to in HAR § 11-114-5(b) do not exist and therefore no devices, including the Intoxilyzer 8000, were approved pursuant to HAR § 11-114-5(b). We disagree. West assumes that the "CFR" citations in HAR § 11-114-5(b) refer to the Code of Federal Regulations. However, it appears that the "CFR" citations refer to the Federal Register. For example, HAR § 11-114-5(b) refers to "[t]he model specifications of NHTSA for evidential breath alcohol testing devices and for calibrating units . . . as contained in 49 CFR, No. 242, pp. 48854-48865 and 49 CFR, No. 242, pp. 48865-48872, respectively . . . ." Volume 49 of the Federal Register at pages 48854-48865 contains notices from the DOT NHTSA dated December 14, 1984, regarding "Highway Safety Programs; Standard for Devices to Measure Breath Alcohol" and "Highway Safety Programs; Model Specifications for Evidential Breath Testing Devices: Publication of a Conforming Products List." Volume 49 of the Federal Register at pages 48865-48872 contains a notice from the DOH NHTSA dated December 14, 1984 regarding "Highway Safety Programs; Model Specifications for Calibrating Units for Breath Alcohol Testers; Publication of a Conforming Products List." Thus, the references in HAR § 11-14-114-5(b) correspond with citations to the Federal Register.

(c)     The DUI coordinator may approve, in writing, modified versions of approved instruments, accessories, and accuracy verification devices.  Approval will be contingent upon the continued performance of the instrument, accessory, or calibrating within the specifications set forth in subsection (b).

(d)     All breath alcohol testing devices approved by the director of health as of the effective date of this chapter shall remain approved unless the approval is specifically revoked by the director of health in writing.

We construe HAR § 11-114-5(b) as meaning that breath alcohol testing devices that appear in updated versions of the NHTSA's Conforming Products List of Evidential Breath Measurement Devices (CPL-EBMD) are approved by the DUI Coordinator.  At the time relevant to this case, the Intoxilyzer Model 8000, manufactured by CMI, Inc., was included in the CPL-EBMD.  See Conforming Products List of Evidential Breath Measurement Devices, 75 Fed. Reg. 11624-01 (Mar. 11, 2010).

Based on the foregoing, we take judicial notice of the DUI Coordinator's approval of: (1) the Intoxilyzer 8000 as a breath alcohol testing instrument; and (2) the use of its Internal Standards as an accuracy verification device.  See HRE Rule 201(b).

D.

West contends that the admission of exhibits showing that the Intoxilyzer supervisor had performed accuracy tests on the Intoxilyzer 8000 and the results of those tests violated her confrontation rights.  We disagree.

In State v. Marshall, 114 Hawai'i 396, 163 P.3d 199 (App. 2007), we rejected Marshall's claim that the introduction of an Intoxilyzer Supervisor's sworn statements to establish that the Intoxilyzer used had been properly calibrated and tested for accuracy violated his confrontation rights.  We held that the Intoxilyzer Supervisor's statements were not testimonial and thus did not implicate Marshall's confrontation rights because the statements "were not specific as to Marshall[,] . . . were not designed *primarily* to establish or prove some past fact, . . . and [were] merely a record of routine, nonadversarial matters

made in a nonadversarial setting." Marshall, 114 Hawai'i at 401-02, 163 P.3d at 204-05 (internal quotation marks and citations omitted). We also cited numerous decisions from other jurisdictions that had reached the same conclusion. Id.

Subsequent decisions of the Hawai'i Supreme Court and the United States Supreme Court support our confrontation clause analysis in Marshall. See State v. Fitzwater, 122 Hawai'i 354, 373-74, 227 P.3d 520, 539-40 (2010) (concluding that a speed check card created to verify that a police car's speedometer was in proper working order is nontestimonial in nature); Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009) ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. . . . [D]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.") We conclude that the admission of the challenged exhibits did not violate West's confrontation rights.

III.

Based on the foregoing, we affirm the District Court's Judgment.

DATED: Honolulu, Hawai'i, May 27, 2015.

On the briefs:

Kevin O'Grady, Esq.
(Law Office of Kevin O'Grady, LLC)
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*[signature]*
Associate Judge

*[signature]*
Associate Judge